UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

CARL J. McCOY, 04-B-2280,

        Petitioner,

      -v-                               09-CV-0235(MAT)
                                                    **ORDER**

H.D. GRAHAM,

        Respondent.
─────────────────────────────────

## I.   Introduction

*Pro se* petitioner Carl McCoy ("petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction in Monroe County Court of two counts of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal L. § 265.02(4), (1)) following a jury trial before Judge Frank P. Geraci. Petitioner was sentenced as a persistent violent felony offender to 12 years to life imprisonment.

## II.  Factual Background and Procedural History

On April 30, 2003, an investigation of a robbery at Ontario Building Supply on York Street in the City of Rochester led police to petitioner, who had been driving a maroon Honda sedan that was observed at the robbery location earlier in the evening. Suppression Hr'g Minutes dated 9/26/2003 ("H.M.") 8-10, 16, 18-20, 25-30, 34-38, 86-87.

When Monroe County Sheriff's Deputy Christopher Fay ("Fay") encountered petitioner at his apartment complex at 194 Crittenden

Way, petitioner looked over his shoulder and began to quickly walk away as the deputy approached petitioner in his patrol vehicle. Fay told petitioner to stop, but petitioner began to run through a grassy area between the apartment buildings. H.M. 38-40.

As petitioner ran, he had his hand inside his coat and appeared to pull something out of his pocket. Petitioner ignored Fay's further requests to stop, and continued running.  During the chase, petitioner made pulling motions with his pocket, and threw his jacket on the ground as he ran. He was ultimately apprehended near the front of the apartment complex near West Henrietta Road. When the K-9 team arrived and re-traced petitioner's path, police recovered a boot, petitioner's jacket, and a white bag containing a .38 caliber revolver in a nearby ravine. H.M. 40-42, 53-54, 68-69.

Members of the Rochester Police Department then transported petitioner to the Public Safety Building for further investigation of the robbery at Ontario Building Supply. Following petitioner's Miranda waiver, he initially told police that he was taking out his garbage when police started chasing him, and he didn't know anything about a gun. According to petitioner, he had been home all day sleeping because he was up all night selling drugs on West Avenue. He further told investigators that his brother, Bredell, a/k/a Trevon McCoy, had stopped by his apartment and left a bag with a gun in it, and that he only learned of the gun when his

girlfriend told him about it. Petitioner then became worried that his parole officer might stop by, so he decided to dispose of the weapon. Petitioner told investigators to call his girlfriend, who would confirm that he had been sleeping all day on April 30, 2003. When investigators called her, however, she told them that petitioner did leave the apartment sometime between lunch and dinner.[1] H.M. 43, 61, 88-90, 98-101; Trial Tr. ("T.") 351-362.

Petitioner was found guilty, see T. 480, and was subsequently adjudicated a persistent violent felony offender and was sentenced to aggregate terms of imprisonment totaling 12 years to life. Sentencing Tr. ("S.T.") 10.

Petitioner appealed his conviction to the Appellate Division, Fourth Department, on the following grounds: (1) the police lacked reasonable suspicion justifying pursuit and probable cause to arrest petitioner; (2) the trial court erred in failing to dismiss the jury pool because it did not represent a fair cross section of the community; (3) the trial court erred in refusing petitioner's request for a jury instruction regarding "temporary innocent possession"; (4) the trial court erred in providing the jury with an expanded definition of "knowingly"; and (5) the trial court erred in allowing testimonial hearsay into evidence at petitioner's persistent violent felony offender hearing. See Respondent's Appendix ("Appx.") B. The Appellate Division unanimously affirmed

---

[1] Petitioner was not charged with the robbery that was being investigated.

the judgment of conviction. People v. McCoy, 46 A.D.3d 1348 (4th Dept. 2007). Petitioner sought leave to appeal to the New York Court of Appeals on all but issues (3) and (5). Appx. F. That application was denied on March 20, 2008. People v. McCoy, 10 N.Y.3d 813 (2008).

Petitioner then filed a timely petition for writ of habeas corpus, raising the same grounds as he did on direct appeal. Petition ("Pet.") ¶ 22(A)-(D) & Attach. For the reasons that follow, petitioner is not entitled to the writ, and the petition is dismissed.

## A.  General Principles Applicable to Federal Habeas Review

### 1.  Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court

decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## 2.   Exhaustion Requirement and Procedural Bar

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts". Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263, n.9 (1989) (other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Id.

The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., actual innocence). See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see also Sawyer v. Whitley, 505 U.S. 333 (1992).

## III. Discussion

### B.   Merits of the Petition

#### 1.   Fourth Amendment Violation (Ground One)

Petitioner first contends that his arrest was unconstitutional because there was no reasonable suspicion to justify his pursuit and no probable cause to effect his arrest. Pet. ¶ 22(A). The respondent has correctly submitted that petitioner's claims are not reviewable

by this Court pursuant to the doctrine of <u>Stone v. Powell</u>, 428 U.S. 465 (1976).

In general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, (1976) (footnotes omitted).

The Second Circuit has noted that <u>Stone</u> requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." <u>Gates v. Henderson</u>, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), <u>cert. denied</u>, 434 U.S. 1038 (1978) (emphasis added). Thus, a federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process...." <u>Id.</u> at 840; <u>accord</u> <u>Capellan v. Riley</u>, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." <u>McPhail v. Warden, Attica Corr. Facility</u>, 707 F.2d 67,

69 (2d Cir. 1983). It is well-established that New York affords criminal defendants the requisite corrective procedures. See N.Y. Crim. Proc. L. § 710.10 *et seq.*; see Capellan, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp. 1988) as being facially adequate").

Here, petitioner was afforded a suppression hearing by the county court, after which the hearing court issued a thorough decision setting forth the findings of fact and conclusions of law. Appx. C. 14-24. He then raised his Fourth Amendment claim to the Appellate Division, Fourth Department, which considered and rejected his argument on the merits. McCoy, 46 A.D.3d at 1348-49. Contrary to his contention, see Petitioner's Traverse ("Trav.") at 4, petitioner was clearly provided with the opportunity to fully litigate his Fourth Amendment claims in the state courts, and may not now raise these claims on habeas review.

Although there is a possibility that habeas relief may be available on a Fourth Amendment claim "if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process," Cappellan, 975 F.3d at 70, there is no such unconscionable breakdown present on this record.

Accordingly, petitioner does not make any claim that would fall within an exception that would permit habeas review of his Fourth Amendment challenge, and this ground for relief does not support issuance of the writ.

## 2.    Fair Cross section Claim (Ground Two)

Petitioner claims that the jury pool violated the fair cross section requirement of the Sixth Amendment and that the trial court erred in denying defense counsel's application to dismiss the jury pool. Pet. ¶ 22(B). On direct appeal, the Fourth Department held that petitioner's motion failed to set forth sufficient facts demonstrating a systematic exclusion of African-Americans from the jury pool. McCoy, 46 A.D.3d at 1349 (citations omitted).

"[T]he Sixth Amendment requires that jury panels be drawn from a source representing a 'fair cross section' of the community in which the defendant is tried." U.S. v. Jackman, 46 F.3d 1240 (2d Cir. 1995) (quoting Taylor v. Louisiana, 419 U.S. 522, 536 (1975)). "[T]his fair cross section requirement applies only to the large jury pool involving the source of the jurors and not to the trial petit jury. Concepcion v. U.S., 181 F.Supp.2d 206, 226 (E.D.N.Y. 2002) (citing Taylor, 419 U.S. at 538) ("A defendant is not entitled to a jury of any particular composition"). Stated another way, the Sixth Amendment guarantees only that the defendant will have the possibility of a jury that reflects a fair cross-section of the community. Roman v. Abrams, 822 F.2d 214, 229 (2d Cir. 1987).

To establish a *prima facie* case of a viable "fair cross section" claim under the Sixth Amendment, the petitioner must demonstrate that the under-representation of the racial group claimed to be excluded is the result of "systematic exclusion of the group in the jury selection process." <u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979). Specifically, the petitioner must show: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." <u>Duren</u>, 439 U.S. at 364.

The record reflects that after the jury pool had been brought in the courtroom, three of the fifty prospective jurors appeared to be African-American. According to the U.S. Census statistics for the year 2000, African-Americans constituted 13.7% of the population in Monroe County. Defense counsel then moved for an order dismissing the jury panel on the basis of systematic under-representation, relying on data obtained by the Monroe County Public Defender's Office from twenty-five trials in a six-month period, which indicated both the total number of people in each jury pool and number of African-American people in each jury pool for those trials. Counsel also included in his motion a statistical analysis of that data provided by statistician Dr. James Halavin of Rochester

Institute of Technology, and submitted anecdotal affirmations from private attorneys and public defenders who stated their respective opinions regarding representation of Africa-Americans in superior court jury pools. The trial court denied petitioner's motion on the ground that petitioner's papers did not indicate a systematic under-representation. T. 39-47.

Petitioner has met the first requirement of the Duren standard, because African-Americans are a "distinctive" group in the community. See Jackman, 46 F.3d at 1246 (2d Cir. 1995). He has failed to demonstrate, however, that the representation of African-Americans was unfair given their population in the community, or that the alleged under-representation was due to a systematic exclusion.

In the instant case, three of the fifty potential jurors were African-American, constituting approximately 6% of the jury pool. Measuring the difference between the group's representation in the general population and the relevant jury pool, see U.S. v. Rioux, 97 F.3d 648 (2d Cir. 1996), the "absolute disparity" between the percentage of African-Americans in the community and those present in the courtroom as prospective jurors among the jury pool (13.7% less 6%), is 7.7%.

Although the appropriate measure would be to adjust the percentage of the total African-American population of Monroe County to exclude minors ineligible to vote, see Rioux, 97 F.3d at 658, the

Court need not do so here, as "several federal courts of appeals have required the absolute disparity to meet a 10% threshold before finding unfair representation." U.S. v. Barlow, 732 F.Supp.2d 1, 34 (E.D.N.Y. 2010) (citing U.S. v. Phillips, 239 F.3d 829, 842 (7th Cir. 2001) ("[W]e have noted that a discrepancy of less than ten percent alone is not enough to demonstrate unfair or unreasonable representation of blacks on the venire.") (citation and quotation omitted); U.S. v. Grisham, 63 F.3d 1074, 1078-79 (11th Cir. 1995) ("If the absolute disparity ... is 10 percent or less, the second element is not satisfied.")); see, e.g., Ramseur v. Beyer, 983 F.2d 1215 (3rd Cir. 1992) (en banc), cert. denied, 508 U.S. 947 (1993) ("Courts addressing the question of whether a given absolute disparity constitutes 'substantial underrepresentation' have held that absolute disparities between 2.0% and 11.5% do not constitute substantial underrepresentation") (collecting cases); U.S. v. McAnderson, 914 F.2d 934, 941 (7th Cir. 1990) (absolute disparity of 8% de minimus); U.S. v. Butler, 611 F.2d 1066, 1069-70 (5th Cir. 1980) (8.69% was not "constitutionally impermissible disparity").

Even assuming that petitioner has shown a substantial disparity between the percentage of African-Americans in the community and the percentage of African-Americans present in the courtroom as prospective jurors, he nonetheless fails to establish the remaining Duren requirement of systematic exclusion. See U.S. v. Joyner, 201 F.3d 61, 75 (2d Cir. 2000) (finding that defendant failed to

establish *prima facie* case of systematic exclusion, where the venire only contained one African-American out of 500 jurors). In <u>Joyner</u>, the defendant argued that his Sixth Amendment right to a jury of his peers was violated as the venire contained only one African-American out of 500 prospective jurors. The Second Circuit found that the defendant "failed to establish a *prima facie* case because he made absolutely no showing that African-Americans were systematically excluded or that the district court's use of voter registration and motor vehicle bureau lists to select the venire result[ed] in unfair underrepresentation." <u>Id.</u> (citing <u>Duren</u>, 439 U.S. at 364); <u>Rioux</u>, 97 F.3d at 655-56; <u>see also</u> <u>Johnson v. U.S.</u>, 10 F.Supp.2d 390, 392 (S.D.N.Y. 1998) (rejecting "fair cross section" claim where defendant presented "nothing in support of his claim that the jury selection process utilized to obtain jurors for his trial did not afford him the opportunity" for a representative jury venire) (citing <u>U.S. v. Jackman</u>, 46 F.3d 1240, 1244 (2d Cir. 1995)). Likewise, petitioner has not explained how the jury pool selection process systematically excludes African-Americans from the lists of prospective jurors in Monroe County as required by <u>Duren</u>.[2]

In sum, petitioner has failed to establish all three elements of the <u>Duren</u> test, and has thus not set forth a *prima facie* case of a violation of the Sixth Amendment's fair cross section requirement.

---

[2] Notably, Dr. Halavin's report acknowledged that he "cannot conclude that this underrepresentation is due to the fact that African-Americans have been systematically excluded from the jury pools . . . since I do not have any knowledge on how the pools are selected." T. 57.

The Appellate Division therefore did not unreasonably apply clearly established federal law in rejecting his fair cross section claim.

### 3.   **Batson** Violation (Ground Three)

Next, petitioner claims that the trial court erred in dismissing two Hispanic prospective jurors because the defense met its burden of proving purposeful discrimination. Pet. ¶ 22(C). In rejecting petitioner's Batson[3] claim on direct appeal, the Appellate Division held:

> Contrary to the further contention of defendant, there were no Batson violations. The People offered race-neutral reasons for each peremptory challenge at issue, and the reasons were not pretextual. Specifically, the People explained that they used peremptory challenges with respect to two Hispanic prospective jurors who they believed would likely be sympathetic toward defendant. One of those prospective jurors was the friend of a convicted murderer and had recently visited another friend in jail, and the other had recently visited her uncle in jail.

McCoy, 46 A.D.3d at 1349 (citations omitted).

In Batson v. Kentucky, the Supreme Court held that the Equal Protection Clause of the Constitution prohibits a prosecutor from excluding prospective jurors "solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant."

---

[3] See Batson v. Kentucky, 476 U.S. 79 (1966) (a prosecutor's use of peremptory challenges to exclude jurors based solely on their race violates the Equal Protection Clause of the Fourteenth Amendment).

476 U.S. at 89. There are three steps to a Batson inquiry. Initially, the opponent of a peremptory challenge must make out a *prima facie* case of discrimination. Purkett v. Elem, 514 U.S. 765, 767 (1995). The burden of production then shifts to the proponent of the strike to come forward with a race-neutral explanation. Id. "The second step of this process does not demand an explanation that is persuasive, or even plausible." Id. at 767-68. If a race-neutral explanation is provided, the trial court must then decide whether the opponent challenging the strike has proved purposeful discrimination. Id. at 767. That determination is a finding of fact entitled to deference by the reviewing court. Hernandez v. New York, 500 U.S. 352, 364-66 (1991); see Purkett, 514 U.S. at 769 ("[I]n habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are 'not fairly supported by the record.'") (citation omitted); U.S. v. Douglas, 525 F.3d 225, 239 (2d Cir. 2008) ("Since a finding as to whether there was intentional discrimination is a finding of fact, and the trial court findings in this context largely will turn on evaluation of credibility, the trial court's finding as to whether the prosecutor's reason was race-neutral may be overturned only if that finding is clearly erroneous.") (citation omitted); see generally 28 U.S.C. §§ 2254(d)(2), (e)(1).

Step one of the <u>Batson</u> analysis is not at issue here, since the Supreme Court has held that the *prima facie* case of discriminatory intent because irrelevant to the analysis of a peremptory challenge once the trial court proceeds to the second and third steps, as it did here. <u>See</u> <u>Hernandez</u>, 500 U.S. at 359.

### a.   Prospective Juror No. 1

Defense counsel first raised a <u>Batson</u> challenge as to Juror No. 1 because he was the sole Hispanic male in the group. T. 130. The prosecutor then explained that the juror was challenged because he had a friend that was convicted of murder. T. 89-90, 130. Counsel responded that "[Juror No. 4] also has a friend who's a convicted murderer, and I kept [him] on." T. 89-90, 130. The trial court denied petitioner's <u>Batson</u> challenge. T. 130.

Petitioner argued in the lower court that the two prospective jurors (Nos. 1 and 4) were indistinguishable in every respect other than race. T. 130.  However, the record indicates that while both men had friends who had been convicted of murder, the prosecution of Juror No. 4's friend was remote in time (twenty years prior) and Juror No. 1's friend had been convicted only five years earlier. T. 88-89. Moreover, Juror No. 1's *voir dire* responses indicate that he was equivocal regarding whether his friend had been treated fairly in his criminal prosecution.[4] Juror No. 4, on the other hand,

---

[4] When asked whether his friend had been treated fairly in his criminal prosecution, Juror No. 1 responded, "Yeah. I think maybe -- I mean, I can't really know because I'm not the person that was being testified on . . . ." T. 90.

stated that he felt his friend was treated fairly during the process. T. 90. Additionally, Juror No. 1 described having visited a friend in jail "a few times . . . about four months ago, five months ago." T. 112-113.

Here, the reason offered by the district attorney was facially neutral. See, e.g., Crenshaw v. Superintendent of Five Points Corr. Facility, 372 F.Supp.2d 361, 371 (W.D.N.Y. 2005) (race-neutral strike where juror had friend that was a convicted murderer and whom he wrote letters to). The prosecutor therefore met the low burden called for at step two of the Batson test. See Purkett, 514 U.S. at 767-768 ("[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices).

With regard to the third step of the Batson inquiry, a trial court's finding as to whether the prosecutor intentionally discriminated on the basis of race when exercising a peremptory strike is a factual finding entitled to appropriate deference by a reviewing court. Batson, 476 U.S. at 98 n.21 (citation omitted); accord, e.g., Jordan v. Lefevre, 293 F.3d 587, 593 (2d Cir. 2002). Since the trial judge's conclusions during the type of inquiry contemplated by Batson "largely will turn on evaluation of credibility," the Supreme Court has instructed that reviewing courts "ordinarily should give those findings great deference." Id. (citing Anderson v. Bessemer City, 470 U.S. 564, 575-76 (1985)). Petitioner

18

has provided no basis for this Court to reject the trial judge's findings. Moreover, defense counsel was given the opportunity to make a full record on this matter. <u>Cf.</u> <u>Jordan v. Lefevre</u>, 206 F.3d 196, 200 (2d Cir. 2000) (finding <u>Batson</u> violation whether trial court "acted summarily, without permitting the defense to create a record sufficient to allow a determination of where the prosecutor's explanations were credible and nonpretextual."). Accordingly, the trial court's <u>Batson</u> ruling is supported by the record and petitioner's argument with regard to Juror No. 1 fails.

### b.  Prospective Juror No. 18

A Hispanic female was the subject of petitioner's second <u>Batson</u> challenge. T. 130. The prosecutor explained his peremptory challenge: "Judge, [Juror No. 18] visited the jail recently. Based on that, I don't think she'd be appropriate. She just visited her uncle in jail only a few months ago." T. 130-131. Defense counsel responded, "visiting someone in jail is not a relevant factor as to this case." T. 130-131. The trial court denied petitioner's motion. T. 131.

The prosecutor's proffered reason for striking Juror No. 18, that she had visited a friend in jail, was facially neutral. <u>See, e.g.,</u> <u>U.S. v. Mickens</u>, No. 10-10347, 2011 WL 49843, *2 (11th Cir. 2011) (unpublished opinion) (visiting a relative or close friend in jail and having relatives who had been arrested were gender-neutral reasons for challenged peremptory strikes). Petitioner contends,

however, that the prosecutor failed articulate a race-neutral explanation "related to the particular case to be tried." See Batson, 476 U.S. at 98. The Court disagrees. Petitioner was in custody during the course of his trial, and was under parole supervision at the time of the offense. His custodial status and potential for trial testimony concerning his prior and current incarceration made jail experience a relevant consideration in this case. Indeed, the record reflects that another female juror who stated that she visited her daughter in jail 6 months before was also stricken peremptorily and did not serve on the jury. T. 114, 131. The trial court ultimately credited the prosecutor's explanation and denied the Batson motion. Petitioner has not attempted to rebut the trial court's factual findings, and the Court therefore cannot find that petitioner has sustained his burden of proving that the prosecutor's reasons for dismissing Juror Nos. 1 and 18 were racially motivated.

Accordingly, the state court's Batson ruling was not objectively unreasonable in light of the evidence presented in the state-court proceeding, and these claims are dismissed.

### 4.    Improper Jury Charge (Ground Five)

Petitioner avers that the decision of the trial court to grant the prosecution's request for an expanded jury instruction regarding the element of "knowingly" violated his due process rights by relieving the prosecution of its burden of proof with respect to

petitioner's knowledge of the loaded weapon. Pet., Attach., Ground Five. The Appellate Division summarily rejected petitioner's contention as lacking in merit. McCoy, 46 A.D.3d at 1350.

The Due Process clause of the Fourteenth Amendment protects a defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Because of this burden on the state to prove every element of a crime beyond a reasonable doubt, instructions which a jury could construe as creating an "irrebuttable direction" or a mandatory, burden-shifting presumption on the issue of intent violate due process where intent is an element of the crime charged. Sandstrom v. Montana, 442 U.S. 510 (1979).[5]

The threshold inquiry in determining whether a jury instruction unconstitutionally shifts a burden to the defendant is to determine whether the presumption is "permissive" or "mandatory." Ulster County Court v. Allen, 442 U.S. 140, 157-163 (1979). See also Sandstrom, 442 U.S. at 514; Francis v. Franklin, 471 U.S. 307, 314 (1984). As the Supreme Court explained in Francis v. Franklin, "[a] mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves certain facts, but does not require the

---

[5] The claimed presumption in the present case relates not to intent, but to the element of knowing possession.

jury to draw that conclusion." 471 U.S. at 314 (footnotes omitted).
Further, unlike a mandatory presumption, "[a] permissive inference
violates the Due Process Clause only if the suggested conclusion is
not one that reason and common sense justify in light of the proven
facts before the jury." Id. at 314-315 (citing Allen, 442 U.S. at
157-163); see also Government of Virgin Islands v. Parrilla, 7 F.3d
1097, 1101 (3d Cir. 1993) (an as-applied challenge to a permissive
inference can succeed "if there is no rational way the trier of fact
could have made the connection permitted by the inference"). In
ascertaining whether a presumption is permissive or mandatory, the
court must determine how a reasonable juror might have interpreted
the instruction. Francis, 471 U.S. at 316. Furthermore, an analysis
should focus on the specific language challenged. Id. at 315.

In the instant case, the first count of the indictment charged
petitioner with the following:

> The defendant, on or about April 30, 2003, in
> the County of Monroe, State of New York,
> knowingly had in his possession a loaded
> firearm, to wit, a .38 caliber Smith and
> Wesson revolver, and such possession did not
> take place in the defendant's home or place of
> business.

Appx. C at 7.[6]

---

[6] N.Y. Penal L. § 265.02(4), repealed in 2006, had previously read: "A
person is guilty of criminal possession of a weapon in the third degree when .
. . [s]uch person possesses any loaded firearm. Such possession shall not,
except as provided in subdivision one or seven, constitute a violation of this
section if such possession takes place in such person's home or place of
business . . . ."

Petitioner's position at trial was that he denied unlawfully possessing the gun and denied knowing it was loaded. During its charge to the jury, the trial court read an expanded jury charge for the culpable mental state at issue:

> A person knowingly possesses a loaded firearm when that person is aware that he is in possession of a loaded firearm. The question naturally arises as to how to determine whether a person had the knowledge that is, the awareness required for the commission of a crime. To make that determination you must decide *if the required knowledge can be inferred beyond a reasonable doubt from the proven facts*. In doing so, you may consider the person's conduct in all of the circumstances surrounding that conduct, including but not limited to what, if anything, did that person do or say. To further [sic] the act of possession of property by a person *permits the inference that such person knows what he possesses. Thus, if you find beyond a reasonable doubt that the Defendant was in possession of a loaded firearm, then you may, but you're not required, to infer from that fact that he knew that he possessed a loaded firearm.* Therefore, in this case, from the facts you find to have been proven, decide whether or not you can infer beyond a reasonable doubt that the Defendant had the knowledge required for the commission of the crime.

T. 450-451 (emphasis added).

Here, the trial court, adopting the language from the New York Pattern Criminal Jury Instructions, <u>see</u> CJI2d[NY] Culpable Mental States—Knowledge, ensured that the jury understood that the presumption of intent on the weapons charge was permissive only. Moreover, there was a rational connection between the proven facts

and petitioner's knowing possession of the loaded firearm. At petitioner's trial, a firearms examiner testified that the rounds of ammunition loaded in the cylinder of the revolver petitioner possessed and discarded were clearly visible to the naked eye, even when the chamber of the revolver was closed. T. 384. Petitioner admitted to police that he handled the revolver and concealed the gun inside a bag and put the bag in his coat pocket before leaving his apartment on the afternoon of April 30, 2003. T. 266, 324-327, 359, 421-422. Furthermore, his conduct in fleeing from Officer Fay, shedding clothing, and discarding the loaded weapon in a ravine behind his apartment complex, supports the proposition that petitioner had knowledge of the loaded revolver. The expanded instruction given by the trial court was therefore appropriate, as the prosecution was required to prove that petitioner knowingly possessed a loaded firearm. See former N.Y. Penal L. § 265.02(4); T. 451. Therefore, the trial court's decision to utilize the expanded jury instruction was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

### 5.   Unexhausted Claims (Grounds Four and Six)

Petitioner contends that the trial court erred in denying his request for the jury to be instructed regarding "temporary lawful possession", and that his adjudication as a persistent violent felony offender is constitutionally infirm. Pet. ¶ 22(D) & Attach., Ground Six.  While these two claims were raised on direct appeal,

petitioner did not expressly request review of those claims in his leave letter to the New York Court of Appeals. Rather, petitioner argued the Fourth Amendment issue at length, and in addition, specifically requested that leave be granted to consider his "fair cross section" and <u>Batson</u> claims, and whether the trial court erred in providing the jury with an expanded definition of "knowingly". Appx. F at 5. His leave letter made no reference to the two remaining claims, thereby rendering them unexhausted.

In order to satisfy the exhaustion requirement, a habeas petitioner "must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement." <u>O'Sullivan</u>, 526 U.S. at 839-40. In <u>Jordan v. LeFevre</u>, the Second Circuit explained that "arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to *each* claim raised does not fairly present such claims for purposes of the exhaustion requirement." 206 F.3d 196, 199 (2d Cir. 2000) (emphasis added). In petitioner's leave letter, he did not ask that the remaining two issues be reviewed, but rather explicitly alerted the New York Court of Appeals to the four other arguments he previously raised in direct appeal. Accordingly, petitioner's claims regarding his persistent violent felon adjudication and the erroneous jury instruction are unexhausted, as they were not fairly presented to the state's highest court.

Moreover, these claims must be deemed exhausted because he cannot raise them in any state court forum since he has used the one request for leave to appeal to which he is entitled and cannot seek collateral relief because the issues were previously determined on the merits on direct appeal. See Grey, 933 F.2d at 119-120; see, e.g., N.Y. Court Rules § 500.20; N.Y. Crim. Proc. L. § 440.10(2)(a) (a motion to vacate a judgment pursuant to § 440.10 must be denied where the claim "was previously determined on the merits upon an appeal from the judgment"). That procedural default bars review here.

"Federal courts may address the merits of a claim that was procedurally defaulted in state court only upon a showing of cause for the default and prejudice to the petitioner." Bossett v. Walker, 41 F.3d at 829 (citing Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). Petitioner does not allege cause for the procedural default. Also, he has not demonstrated that failure to consider the remaining claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Accordingly, those claims are subject to an unexcused procedural default and further review of them in this habeas proceeding is unavailable.

## IV. Conclusion

For the reasons stated above, Carl J. McCoy's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial

showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. U.S.</u>, 369 U.S. 438 (1962).

     **SO ORDERED.**

                        S/Michael A. Telesca

                  _____

                        MICHAEL A. TELESCA
                     United States District Judge

Dated:     April 4, 2011
           Rochester, New York